THEO PINSON, III, and JOAN B. PINSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pinson v. Commissioner
Docket No. 31804-87
United States Tax Court
T.C. Memo 1990-77; 1990 Tax Ct. Memo LEXIS 77; 58 T.C.M. (CCH) 1420; T.C.M. (RIA) 90077; February 20, 1990
Marc E. Grossberg and Christy M. Farrell, for the petitioners. Ana G. Cummings and David H. Peck, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: By statutory notice dated June 18, 1987, respondent determined a deficiency in petitioners' 1983 Federal income tax and additions to tax as follows: Additions to Tax
Section
Section
Section
Section
Deficiency
6621(d) [1]
6653(a)(1)
6653(a)(2)
6661
$ 51,473.00 *
$ 2,573.65 *
$ 12,868.25
*78 Petitioners Theo and Joan Pinson filed a joint Federal income tax return in 1983. At the time of filing their petition in this case, petitioners resided in Houston, Texas. Petitioners contest respondent's determination that they are not entitled to a $ 100,312.65 theft loss deduction in 1983. In the alternative, petitioners claim either a bad debt loss or a capital loss in that same amount. Respondent and petitioners make several objections to the admission of testimony and reports of the opposing party's expert witness. As a preliminary matter, *79 it is necessary to establish what evidence the record encompasses prior to making findings of fact. Hence, we must decide (1) whether all or part of the deposition testimony and expert report of petitioners' expert, George Dillingham, is admissible; (2) whether respondent's expert, Chester Woj, was improperly excluded from the deposition of George Dillingham; (3) whether the testimony and expert reports of Chester Woj should be excluded in their entireties; (4) whether the supplemental report (Exhibit BK) and deposition testimony of Chester Woj, and corresponding Exhibits BA, BB, BC, BD, BE, BF, BG, BH, BI, BJ, and BL, should be excluded; (5) whether testimony by George Dillingham regarding the potential foreclosure sale value of a property is admissible, and (6) whether trial testimony by Cora Paschetag is inadmissible hearsay. FINDINGS OF FACT From the summer of 1981 until March 1983, petitioner Theo Pinson was a general partner in a law firm (the partnership). Pinson joined the partnership at the invitation of the managing partner, Carl Paschetag. At the time Mr. Pinson entered the partnership, Mr. Paschetag and Gwynne Old were partners. During Mr. Pinson's tenure with the *80 partnership, Bert Clardy and Ross Rommel also became partners. The partners had an oral partnership agreement. Under the terms of the agreement, each partner's distributive share of partnership income was to be the yearly partnership receipts which were attributable to that partner minus that partner's expenses and 5 percent management fee to Mr. Paschetag. Mr. Paschetag, as managing partner, kept the partnership's accounting records and check books in return for a management fee of 5 percent of the yearly gross receipts of the partnership. All checks for partners' draws were written by Mr. Paschetag. Mr. Paschetag prepared monthly cash report sheets showing billings attributable to each partner, running totals of partnership gross receipts, and running totals of each partner's draws. In 1982, Mr. Paschetag withdrew partnership funds for himself in excess of his share of partnership receipts for the year. Mr. Paschetag's draws exceeded the sum of net receipts attributable to his efforts plus management fees from the other partners. The partners met with Mr. Paschetag in January 1983, asking for explanations of the excess draws and of the partnership's financial status. Mr. *81 Paschetag declined to acknowledge to the partners that the draws exceeding billings attributable to him constituted a debt to the partnership, or were in any way improper. Mr. Paschetag's widow, however, testified at trial that Mr. Paschetag told her in December 1982 that he had drawn funds in excess of his entitlement and that the partnership would have to be repaid. Mr. Paschetag also told Mrs. Paschetag that he had not drawn funds from the partnership in 1981 to which he was entitled. The partners could not resolve their differences of opinion on the issue of whether Mr. Paschetag must repay the excess draws to the partnership. After considerable tension, the partners mutually agreed to dissolve the partnership in March 1983. All partners except for Mr. Paschetag appointed petitioner Theo Pinson as the winding-up partner. As part of the business of winding up the partnership, Pinson hired Joseph J. Dooling, a certified public accountant. Mr. Pinson directed Mr. Dooling to audit the partnership's books, investigate and determine the terms of the oral partnership agreement, and to prepare the 1983 partnership return in accordance with the results of his investigations. Using *82 the information obtained during the audit and based upon his determination of the terms of the partnership agreement, Mr. Dooling also prepared a lifetime capital account record for each partner. Based on the capital account reports, Mr. Dooling advised petitioners that as of December 31, 1982, Mr. Pinson had been allocated approximately $ 170,000 less than Mr. Dooling's interpretation of the partnership agreement suggested was proper. Mr. Dooling told Mr. Pinson that Mr. Paschetag's excess draws caused the deficiency and that those draws constituted embezzlement or theft. Petitioners claimed a theft loss in 1983, based on the assertion that Mr. Paschetag's excessive draws in 1982 constituted either embezzlement from the partnership or breach of fiduciary duty amounting to theft. Respondent disallowed the deduction and argues that, among other reasons for denying the claim, petitioners had a claim for reimbursement against Mr. Paschetag for which there was a reasonable possibility of recovery in 1983. Both parties looked to the financial status of Mr. Paschetag in 1983 in litigating the prospect of recovery issue. Petitioners' trial strategy centered upon attempting to prove *83 that their general knowledge of Mr. Paschetag's financial condition, which allegedly included knowledge of mortgages outstanding and tax liens filed covering Mr. Paschetag's real property, reasonably indicated that they would not recover their loss even in the event a judgment was entered against Mr. Paschetag. Respondent's trial strategy centered upon using an expert witness to prove that, due to the alleged value of a country home owned by Mr. Paschetag, petitioners could have recovered any loss suffered by reason of Mr. Paschetag's conduct. Respondent furnished the report of his expert witness, Chester Woj, to petitioners 2 weeks prior to the date trial in this case was to commence. At trial, Mr. Woj testified as to his opinion of the 1983 value of a Washington County, Texas, property (the farm), listed by Mr. Paschetag as an asset. Petitioners requested that we hold the record open in order to provide an opportunity for petitioners' expert, George Dillingham, to testify post trial as to the value of the farm. Petitioners explained that they had not anticipated respondent's use of a valuation expert and they were unable to locate a rebuttal expert and furnish a rebuttal report *84 by the date of trial. Absent reasonable grounds for failing to anticipate the need for expert testimony, we would not allow the taking of a post trial deposition. However, we concluded that petitioners had acted reasonably in failing to anticipate the need for expert testimony. Hence, we ordered a post trial deposition to receive facts and opinion from Mr. Dillingham with respect to the farm and six comparable properties described in Exhibit 60. In addition, we directed the parties to clarify and submit in a supplemental stipulation the square footage of the house situated on the farm. At respondent's request, we specifically instructed petitioners to furnish copies of Mr. Dillingham's report and any other exhibits offered in connection with Mr. Dillingham's deposition to respondent two weeks before the April 3, 1989, date of the deposition. Accordingly, petitioners mailed Mr. Dillingham's expert witness report to respondent on March 16, 1989. Respondent received Mr. Dillingham's report and attached exhibits on March 21, 1989, 2 weeks before deposition. That report contained: (1) a resume of Mr. Dillingham's qualifications; (2) six pages detailing Mr. Dillingham's opinion as *85 to the value of the Washington County property and the basis for that opinion; (3) a rebuttal of Mr. Woj's expert witness report and trial testimony on square footage; and (4) a detailed description and financing information on six comparable properties in the vicinity of the Paschetag property. Without prior notice to the Court or to petitioners, respondent brought Mr. Woj to the deposition, proposing to depose him. Petitioners invoked the protection of Rule 145 to exclude Mr. Woj during Mr. Dillingham's deposition. Respondent in turn lodged an objection, claiming a right to Mr. Woj's assistance during cross-examination of Mr. Dillingham. On motion, respondent further objected to admission of any portion of Mr. Dillingham's testimony or expert witness report. In the alternative, respondent argued that the portion of Mr. Dillingham's testimony containing opinion on the value of the farm should be excluded as improper rebuttal. Respondent also requested exclusion of Mr. Dillingham's testimony regarding the potential foreclosure value of the farm. Mr. Woj was deposed over petitioners' objections at the end of Mr. Dillingham's deposition. In conjunction with the depositions, respondent *86 offered Mr. Woj's "Supplementary Expert Witness Report" (supplemental report) into evidence. This report was prepared post trial and was not provided to petitioners before Mr. Woj's deposition. In the supplemental report, Mr. Woj offered a significantly different opinion on the value of the farm than that he had given at trial and amended his testimony of the square footage of the home on the farm. In addition, respondent offered several other exhibits, including comparable sales upon which Mr. Woj did not rely at trial, into evidence during the depositions of Mr. Woj and Mr. Dillingham. Mr. Woj purportedly relied on these exhibits in forming the opinions in the supplemental report. Petitioners also objected to the admission of the supplemental report and respondent's deposition exhibits. We ordered both depositions and all exhibits offered into evidence at the depositions, including expert reports, made part of the record subject to rulings on both parties' multiple objections. We must also decide if trial testimony by Cora Paschetag regarding statements made to her by Mr. Paschetag is admissible hearsay. OPINION A. The Deposition and Expert Report of George Dillingham
*87 Respondent makes a general objection to admission of any portion of Mr. Dillingham's testimony and expert witness report. Respondent points to the fact that petitioners did not cause an expert witness report to be furnished at least 15 days before trial as normally required by Rule 143(f). Respondent's argument that we must exclude Mr. Dillingham's expert report and deposition testimony is without merit. In support of his argument, respondent cites to provisions of Rule 143(f)(1) which state in pertinent part: If not furnished earlier, each party who calls any expert witness shall furnish to each other party, and shall submit to the Court, not later than 15 days prior to the call of the trial calendar on which the case shall appear, a copy of all expert witness reports prepared pursuant to this subparagraph. An expert witness' testimony will be excluded altogether for failure to comply with the provisions of this paragraph, unless the failure is shown to be due to good cause and unless the failure does not unduly prejudice the opposing party, such as by significantly impairing his ability to cross-examine the expert witness or by denying the opposing party the reasonable opportunity *88 to obtain evidence in rebuttal to the expert witness' testimony. However, the requirement in Rule 143(f)(1) that a party furnish expert reports 15 days prior to trial cannot and does not apply to an expert witness whose testimony is taken post trial by Court order. Our Rules do not establish any time frame for exchanging or filing reports of post trial expert witnesses. To require that the reports of post trial expert witnesses be furnished to opposing parties 15 days before trial would be to require the impossible. The matter of the 1983 value of Mr. Paschetag's farm was first raised by respondent in Mr. Woj's expert witness report. Petitioners received that report 14 days before the date trial was to commence. This was the first notice petitioners had of Mr. Woj's intended testimony on the value of the farm. At that point, petitioners had to seek out an expert of their own, and the expert (Mr. Dillingham) needed time to prepare an appraisal of the farm. Obviously, Mr. Dillingham could not prepare an expert report and submit it to respondent 15 days before trial when the necessity for the report first became apparent to petitioners just 14 days before trial. We concluded *89 that petitioners' actions in this circumstance were reasonable. Further it would be contrary to the necessity of ensuring a complete record, upon which we must make a factual finding of the value of Mr. Paschetag's Washington County farm, to exclude such expert testimony. We further find that petitioners fully complied with those portions of Rule 143(f)(1) which do apply to such post trial proceedings. The sole provision in Rule 143(f)(1) which does not apply to post trial expert testimony is the provision requiring submission of expert reports 15 days prior to the date of trial. A party offering post trial expert testimony must still furnish an expert report to the opposing party prior to testimony by the expert unless otherwise permitted by the Court, and the opposing party must not be prejudiced. See Rule 143(f)(1). Respondent was not prejudiced by the lack of Mr. Dillingham's expert report prior to trial because we held the record open to receive Mr. Dillingham's report and testimony at a post trial deposition. We ordered delivery of a copy of Mr. Dillingham's report and exhibits to respondent 2 weeks prior to the deposition to ensure that respondent would not be prejudiced *90 by having to cross-examine Mr. Dillingham without adequate preparation. Respondent had from trial on March 3 until the deposition on April 3 to prepare for cross-examining Mr. Dillingham. The list of comparable properties upon which Mr. Dillingham partly based his deposition testimony was entered into evidence at trial. Respondent received Mr. Dillingham's expert witness report on March 21, 2 weeks before the date of deposition. Respondent was fully informed as to the content and basis for Mr. Dillingham's expert opinion through receipt of Mr. Dillingham's expert report. Thus, respondent had ample time to prepare for effective cross-examination and was not surprised by Mr. Dillingham's testimony. For all the foregoing reasons, respondent's motion to exclude Mr. Dillingham's testimony and expert witness report in their entireties is denied. B. Mr. Dillingham's Valuation Testimony
Respondent maintains in the alternative that we should exclude the first six pages of Mr. Dillingham's expert witness report and the corresponding deposition testimony. These portions propound Mr. Dillingham's opinion as to the 1983 value of Mr. Paschetag's Washington County farm. Respondent argues *91 that this valuation testimony is not proper under the circumstances since it goes beyond a mere focus on Mr. Woj's testimony and includes Mr. Dillingham's own valuation.[2] In this connection, respondent contends that Mr. Dillingham should be limited to a "rebuttal" of Mr. Woj's expert opinion. However, it is neither necessary nor helpful to focus on the meaning of the word "rebuttal" in respondent's argument to limit the scope of Mr. Dillingham's testimony. Further, respondent's reliance on Morgan v. Commercial Union Assurance Cos., 606 F.2d 554, 555 (5th Cir. 1979), does not contribute to a resolution of the evidentiary issues before the Court. Respondent urges us to find that since Mr. Paschetag's net worth in 1983 is implicitly in issue to show whether petitioners *92 had a prospect of recovering funds from Mr. Paschetag in that year, petitioners were on notice that the value of any asset held by Mr. Paschetag in that year might be in contention. Thus, respondent argues that petitioners waived the right to elicit expert testimony on the value of the farm because petitioners did not present expert testimony on the farm's value in their case in chief. We disagree. Petitioners were under no obligation to anticipate, prior to trial, testimony to be offered by respondent on this matter in their case in chief. Therefore Mr. Woj's valuation testimony is properly the subject of post trial expert testimony. Respondent at no point contends that petitioners would have waived the right to present Mr. Dillingham's valuation testimony if they had furnished a pre-trial expert report. Thus, respondent's argument on this issue can be seen merely as an attempt to avoid our ruling that the 15-day provision of Rule 143(f)(1) does not apply to post trial expert witnesses. Moreover, respondent seems to ignore section 6214(a), under which we have jurisdiction "to redetermine the correct amount of the deficiency." Therefore, the Court has the discretion to receive *93 evidence which will assist in such redetermination, provided, of course, that both parties are treated equitably. Further, respondent misconstrues our instruction allowing Mr. Dillingham to testify as to comparable properties to mean the scope of allowable testimony did not encompass Mr. Dillingham's own opinion of the farm's value in 1983. The usefulness of comparable properties evidence is to support a real estate appraiser's opinion as to the value of a particular property. Testimony regarding comparable properties must include opinion of value based on such comparable properties. Mr. Dillingham's expert opinion testimony on the value of the farm is proper expert testimony. Respondent's alternative motion to exclude the first six pages of Mr. Dillingham's expert witness report and corresponding deposition testimony is denied. C. Exclusion of Mr. Woj Wol During Mr. Dillingham's Deposition
Respondent brought Mr. Woj to the deposition of Mr. Dillingham. Petitioners invoked Rules Rule 145 to exclude Mr. Woj during Mr. Dillingham's testimony unless respondent did not internd to intend'to depose Mr. Woj. Respondent objected on the ground that Mr. Woj was present to assist *94 in cross-examining Dr Mr. Dillingham. Mr. Woj was nevertheless excluded during Mr. Dillingham's deposition and thereafter was also deposed. Rule 145 provides that at the request of a party, the Court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. However, rule Rule 145 does not authorize exclusion of, among others, a person whose presence is shown by a party to be essential to the presentation of his cause. Rule 145(a)(3). By the objection of his counsel, respondent apparently claims the benefit of Rule 145(a)(3). We revised Rule 145 in 1979 to delete and replace paragraph (a) so that treatment of witnesses will be consistent with Fed. R. Evid. 615. 71 T.C. 1206. The advisory committee notes to Rule 615 indicate that the exclusion of witnesses is a matter of right, rather than a matter of the judge's discretion. J. Moore, Federal Practice Rules Pamphlet, par. 615.4, p. 265 (1989). Petitioners exercised their right to exclude Mr. Woj during the deposition of Mr. Dillingham by invoking Rule 145. Respondent did not claim, and we do not find, that the presence of Mr. Woj during cross-examination *95 of Mr. Dillingham regarding an uncomplicated real estate valuation was essential to respondent's cause within the meaning of Rule 145(a)(3). However desirable assistance may be, a party has no right to such assistance under Eule Rule 145(a)(3) unless the presence of the expert is essential essential to the party's case. Varlack v. SWC Caribbean, Inc. 550 F.2d 171, 175 (3d Cir. 1977); Stotler v. Commissioner, T.C. Memo. 1987-275. Petitioner's invocation of Rule 145 was appropriate. D. Exclusion of All Testimony of Chester Woj
Petitioners likewise moved generally to exclude the trial testimony, the deposition testimony, and the original and supplemental expert witness reports of Chester Woj. Petitioners argue that Mr. Woj, an engineer, is not qualified to appraise the value of the farm and that Mr. Woj gave false and misleading testimony. Mr. Woj has been a valuation engineer for the Internal Revenue Service for 9 years. He has given appraisals on more than 200 properties during that time, as well as attended several courses on rural property appraisal. We find that Mr. Woj, though an engineer, was qualified as an expert for the purpose *96 of valuing the farm. See also Vesper v. Commissioner, T.C. Memo. 1989-358; Fannon v. Commissioner, T.C. Memo. 1989-136; Smith v. Commissioner, T.C. Memo. 1988-420. Petitioners' objections that Mr. Woj's testimony was false and misleading go to the weight we should give to Mr. Woj's testimony rather than grounds for exclusion. E. Mr. Woj's Supplemental Expert Report and Documentary Evidence Offered at Post Trial Deposition
Following trial Mr. Woj prepared a supplemental expert report. In the supplemental report, Mr. Woj changed his trial testimony on the value of the farm and of the measurements of the house thereon. Respondent states that the revised house measurements are in compliance with our order to provide the Court with a proper measurement of the square footage of the house. Our instructions were that the parties should provide the Court with a supplemental stipulation as to the square footage of the house in issue. Instead, respondent did not apprise petitioners of the amended measurements until the date of deposition. However, as petitioners do not contest the new figure, we will accept Mr. Woj's revised figure *97 in lieu of the requested supplemental stipulation. Petitioners object to the remainder of Mr. Woj's supplemental report, to Exhibits BA, BB, BC, BD, BE, BF, BG, BH, BI, BJ, and BL, and to Mr. Woj's corresponding deposition testimony. Petitioners ask us to exclude the testimony and exhibits on the grounds that respondent failed to inform petitioners or the Court of the intended post trial deposition of or furnish copies of Mr. Woj's supplemental report. Petitioners argue that because of this surprise, they were unable to properly cross-examine Mr. Woj. In the alternative, petitioners pose multiple evidentiary objections to respondent's exhibits. [3]
Respondent offered the exhibits in contention into evidence during the post trial depositions. Exhibit BK is Mr. Woj's supplemental report. Mr. Woj purportedly relied on information contained *98 in the remainder of the exhibits in forming the opinions expressed in the supplemental report. Respondent asserts that, "we were to furnish to the Petitioners the square footage of the house and the improvements which Mr. Woj measured and that is the subject of the supplemental report." However, it is clear that the supplemental expert report encompasses much more than a measurement of the square footage of the home. Moreover, the exhibits respondent urges us to admit were not contemplated in our trial order. Thus, respondent may not rely on claims of compliance with our trial orders in seeking admission of these items. Our procedural rules specifically contemplate the taking of post trial depositions. However, the taking of such depositions is conditional. Rule 83 provides: Nothing in these Rules shall preclude the taking of a deposition after trial has commenced in a case, upon approval or direction of the Court. * * * [Emphasis added.] Respondent's attempt to obtain additional testimony from Mr. Woj at a post trial deposition without first obtaining our approval is a violation of the plain language in Rule 83. Respondent has submitted no reason for failure to *99 seek our advance approval for the post trial deposition. We strongly disapprove of attempts to circumvent our procedural rules. Even had we authorized a post trial deposition of Chester Woj, we agree with petitioners that failure to provide an expert report in an instance such as this results in prejudice to petitioners and violates Rule 143(f)(1). The dangers of prejudice guarded against by Rule 143(f)(1) may be present whenever a party intends to elicit expert testimony. Thus, Rule 143(f)(1) is equally applicable to all occasions where a party intends to elicit expert testimony, whether those occasions occur at pre-trial depositions, at trial, or at post trial depositions. Respondent was aware of the provisions of Rule 143(f)(1). Our order to petitioners to provide respondent with any proposed exhibits at least 2 weeks prior to the deposition was made at the request of, and for the benefit of, respondent. For these reasons, we cannot see that respondent had any good cause for not furnishing petitioners or the Court with Mr. Woj's supplemental report in advance of the deposition. Had respondent complied with Rule 83 and secured our consent to depose Mr. Woj, we would have required *100 that which we required of petitioners, i.e., furnishing to petitioners a copy of Mr. Woj's supplemental Supplemental report in advance of deposition. The post trial deposition was the last opportunity for either party to elicit testimony, cross-examine witnesses, or to offer evidence for admission. Mr. Woj's post trial deposition and supplemental report significantly altered his trial testimony as to the value of the farm. Further, Mr. Woj relied on exhibits and comparable sales not supplied to petitioners before deposition in forming his revised opinion. Respondent's conduct prohibited petitioners from effectively preparing to cross-examine Mr. Woj at the deposition. Under these circumstances, admission of the contested exhibits would prejudice petitioners. Because of the unexplained failure of respondent's counsel to comply with the provisions of Rule 83, the failure to comply with Rule 143(f)(1), and because admission under these circumstances would result in prejudice to petitioners, we exclude Mr. Woj's supplemental report (Exhibit BK), the exhibits which Mr. Woj used to make the supplemental report (Exhibits BA, BB, BC, BD, BE, BF, BG, BH, BI, BJ, and BL), and all corresponding *101 deposition testimony except for those portions of the report and deposition which revised revise the square footage of the home on the farm property. F. Mr. Dillingham's Foreclosure Value Testimony
During deposition, Mr. Dillingham testified as to his opinino opinion of the discount from market value which would occur if Mr. Paschetag's farm were sold on foreclosure. Respondent objects to admission of this testimony on the grounds that it is irrelevant and that the opinion is pure speculation. Fed. R. Evid. 401, applicable through Rule 143(a), defined defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Armco, Inc. v. Commissioner, 87 T.C. 865, 867 (1986). Petitioners testified that they had knowledge of filed tax liens and arrearages in mortgage payments regarding Mr. Paschetag's properties. However, prior to the end of the year in issue, the tax liens were released. There was also testimony at trial that the mortgagee took no action other than writing *102 a letter regarding Mr. Paschetag's arrearage. No foreclosure or forced sale of any of Mr. Paschetag's real properties ever took place. We do not take possible discounts at foreclosure sales into consideration when establishing the market value of a property which was not foreclosed upon during the year in issue. Further, petitioners did not lay a foundation for Mr. Dillingham's testimony regarding the specific discount rates, nor did Mr. Dillingham testify that he relief relied on the discount rates in forming an opinion as to the value of the farm in 1983. For these reasons, the testimony at pages 28-30 and 160-162 of Mr. Dillingham's deposition, which concerns possible foreclosure values of the farm, will be excluded. G. Admissability of Cora Paschetag's Testimony
At trial, Cora Paschetag testified that Mr. Paschetag told her that he had drawn funds from the partnership during 1982 in excess of the amount to which he was entitled and would have to repay the partnership. Both parties agree that this testimony is admissible, pursuant to Fed. R. Evid. 804(b)(3), as a statement against pecuniary interest by an unavailable declarant. petitioners *103 Petitioners object that Mrs. Paschetag's next sentence, regarding later statements by Mr. Paschetag that he did not draw partnership funds in 1981 to which he was entitled, is inadmissible as hearsay which does not fall within any hearsay exception. Mrs. Paschetag's testimony is clearly hearsay as defined in Red Fed. R. Evid. 801(c), and therefore inadmissible unless it falls within one of the exceptions provided in Fed. R. Evid. 803 and 804. Fed. R. Evid. 802; Petzoldt v. Commissioner, 92 T.C. 661, 673 (1989). Respondent argues that the two contiguous statements must be read together, to understand the amount Mr. Paschetag finally told Mrs. Paschetag he owed to the partnership. Thus, respondent's position is that the testimony to which petitioners object is part of the immediately preceding statement against pecuniary interest, and therefore also admissible. Fed. R. Evid. 804(b)(3) is silent about how to handle self-serving or neutral statements that accompany statements against interest. *104 In general, the statements should be assessed to determine whether the self-serving portion is collateral matter which tends to fortify the disserving aspects or whether it is unrelated to the disserving aspects of the statement against interest. Cf. United States v. Woolbright, 831 F.2d 1390, 1395 (8th Cir. 1987); United States v. Barrett, 539 F.2d 244, 252 (1st Cir. 1976); J. Weinstein's Evidence Manual, par. 17.04(02)(e) (1989). The testimony to which petitioners object concerns conversations between Mr. Paschetag and his wife which occurred later in time than the conversation which amounted to a statement against Mr. Pascehtag's Paschetag's pecuniary interest. Because of this difference in time periods, it is not apparent whether Mr. Paschetag was relating the statement regarding 1981 draws as part of his estimation of total excess draws from the partnership or whether the statement was completed completely unrelated. The statement does not tend to fortify the disserving aspects of the admitted statement against interest. Therefore, this testimony is not admissible under Fed. R. Evid. 804(b)(3) as a statement *105 against the pecuniary interest of an unavailable declarant. As we find no other exception which allows admission, the testimony is excluded. Petitioners also move for reimbursement of costs attendant to the deposition of Mr. Woj on the grounds of surprise and prejudice. Pursuant to Rule 231, this motion may only be granted to substantially prevailing parties, after service of a written opinion on the issues absent settlement, and must be in the form set forth in Rule 231(b). Accordingly, petitioners' petitioners" motion for costs is not proper at this time. An appropriate order will be issued. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Section 6621(d)(1) was amended and redesignated as section 6621(c)(1) by Pub. L. 99-514, sec. 1511(c)(1), 100 Stat. 2752, on October 22, 1986. The statutory notice of deficiency, dated June 18, 1987, therefore improperly referred to section 6621(d)(1) rather than to section 6621(c)(1). However, respondent conceded that addition to tax and it is not now in issue. * This amount cannot be determined at this time.↩
2. Respondent also argues that Dillingham is not qualified to appraise the property in issue nor to give opinions on the qualifications of respondent's witness, Woj. Because of Dillingham's experience in appraising and selling real estate in Washington County, respondent's arguments lack merit. Moreover, these arguments go to the weight we should give Dillingham's testimony, not its admissability.↩
3. As further support that we should exclude Woj's testimony, petitioners argue that Woj perjured himself at trial and that respondent caused Woj to manufacture information to support an inflated value on the farm. Absent proof of perjury or falsehood, these arguments go to the weight and credibility of Woj's testimony, rather than admissibility.↩